UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Al Martinez,

        Plaintiff,

    v.                                  Case No. 2:03cv1059

Limited Brands, Inc., *et al.*,               Judge Michael H. Watson

        Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court upon Defendants Limited Brands, Inc., ("Limited Brands") and Bath & Body Works, Inc.'s ("BBW") Motion for Summary Judgment (Doc. 28) and Defendant Paul Jones' Motion for Summary Judgment. (Doc. 29) Plaintiff Al Martinez has filed a Response in Opposition (Doc. 39), and Defendants have filed Replies. (Docs. 47, 48) The Court also held oral argument on Defendants' Motion for Summary Judgment on September 2, 2005. (Doc. 57)

Also pending before the Court is Plaintiff's Motion to Strike the Affidavit of Ken Montera. (Doc. 40) Defendants have filed a Response in Opposition and Motion for Leave to file a Sur-reply. (Doc. 49) This matter is now ripe for review.

**I.    FACTUAL BACKGROUND**

Martinez is of Mexican origin. (Al Martinez Depo. at 6) Martinez was employed by BBW as Director of Loss Prevention from July 26, 1996 to January 23, 2003. (Id. at 131,

176)  BBW is a subsidiary of Limited Brands.  (Leonard Schlesinger Depo. at 12-14)  Other subsidiaries or "Brands" of Limited Brands include White Barn Candle Company, Victoria's Secrets Stores, Inc., The Limited Stores, Inc., and Express, LLC.  (Id. at 13-14)

As Director of Loss Prevention, Martinez was responsible for managing loss prevention at over 1,600 BBW stores.  (Martinez Depo. at 395-96)  One of Martinez's responsibilities included reducing "shrink," which is the losses attributable to external and internal theft.  (Id. at 182, 238)

Beth Pritchard, the CEO of BBW, was Martinez's immediate supervisor.  (Id. 162) Pritchard retired from her position two weeks before Martinez was terminated.  (Id. at 433-34)

In late 2001 or early 2002, Limited Brands concluded that a new approach to loss prevention was necessary because of the shrink rate of the Brands.  (Schlesinger Depo. 32-36)  Limited Brands hired an expert to make recommendations on how to improve loss prevention and commissioned an internal study to review the loss prevention departments. (Id. at 34)  Based on the expert's recommendations and the results of the study, Limited Brands  decided to centralize loss prevention.  (Id. at 52)  A new "Vice President of Loss Prevention" was to oversee this centralization.  (Id. at 31)

In the Spring of 2002, Limited Brands started a nationwide search to fill the position. (Id. at 36)  An executive search firm and the loss prevention expert identified candidates for the position.  (Id.)  Defendant Jones and another candidate were finalists for the position.  (Id. at 39-40)  Pritchard asked that Martinez be interviewed, and in late May of 2002 Martinez was interviewed.  (Martinez Depo. 262-63)  Interviews were conducted by business leaders from within Limited Brands.  (Martinez Depo. Ex. 15; Schlesinger Depo.

2

at 56)  Jones was selected and hired on June 17, 2002.  (Paul Jones Depo. at 117) Martinez was found to be not qualified for the position.  (Douglas Williams Depo. at 23-26)

Jones was selected because he had senior level experience in areas other than loss prevention; he had previously centralized loss prevention programs in organizations similar to Limited Brands; and he met specific requirements listed in the "Job Specification," such as experience managing and implementing loss prevention programs in a multi-branded, retail business.  (Williams Depo. at 45-47, 59-60; Schlesinger Depo. at 99-100)

Martinez was found to be not qualified because he did not have senior-level experience in areas other than loss prevention; and he lacked a good working relationship with other departments.  (Williams Depo. at 26; Schlesinger Depo. at 107-108) One of the "Overall Responsibilities" listed in the "Job Specification" was the ability to work with "functional heads," such as CEOs, Distribution, Finance, Legal and Human Resources. (Schlesinger Depo. 162-63)  In addition, Martinez was found to not meet other requirements of the position, including having a "proven track record of assessing and developing talent," being "team-oriented," possesing "effective communication skills," and being an "effective leader and coach."  (Williams Depo. at 25)

Martinez alleges that he was more qualified than Jones and he should have received the promotion because he was an internal candidate.  (Martinez Depo. at 286-87) Martinez also states that during the interview Mark Giresi, Senior Vice President/Chief Stores Officer of Limited Brands, made an offensive comment.  (Id. at 276, Ex. 15) Specifically, Giresi asked Martinez where he was from, and when Martinez replied that he had grown up in Texas, Giresi asked him if he had grown up along the border.  (Id. at 275-76)  Martinez maintains that this question was offensive because it infers that he had just

3

come across the border.  (Id. at 275)  However, Martinez did not report Giresi's comment to anyone at BBW.  (Id. at 276)

Once Jones began working as Vice President of Loss Prevention, Martinez missed several meetings scheduled by Jones.  (Jones Depo. at 172)  Martinez maintains that he missed these meetings due to his involvement with another project called "Project New View."  (Martinez Depo. at 307, 314, 322)  This project was intended to reduce overhead at BBW.  (Doc. 39-2, Martinez Aff. ¶ 5)  Martinez states that he was told to dedicate his time to the project.  (Id. at 294)  Martinez estimated that the project took thirty to forty hours of his time each week.  (Id. at 372)  Martinez was told that he could not discuss the project with others, including Jones.  (Id. at 318)  Martinez states that he sent Jones an email explaining that he needed to dedicate his time to the project and that Dave Alves, a regional manager, would be taking on his other responsibilities.  (Id. at 391)  Pritchard offered to have a conversation with Jones regarding Martinez's level of commitment to the project, but Martinez does not know if Pritchard ever spoke to Jones.  (Id. at 389-390)

However, Jones expected Martinez to assist him in reshaping loss prevention despite his involvement with Project New View.  (Jones Depo. at 165)  Jones states that others involved in the project were still able to perform their full-time job.  (Id. at 169)  Jones felt that when Martinez did attend a meeting, he did not contribute any substance to the discussion.  (Id. at 141)  Jones cites to a five-hour meeting where Martinez did not speak.  (Id. at 146)  Jones counseled Martinez regarding his commitment to improving loss prevention and his participation during meetings.  (Id. at  141, 147-48, 276)

Jones also found that Martinez was lacking in store visitations and training his subordinates.  (Id. at 181-83)  Jones found that when Martinez did visit stores, he visited

stores in "low shrink" markets.  (Id.)  In October and November of 2002, Jones asked Martinez to spend more time visiting stores, yet in the Fall of 2002, Martinez only traveled to stores in Columbus, Northeast Ohio, and Phoenix, Arizona.  (Martinez Depo. 391-93)  Jones wanted Martinez to visit stores in California, a high shrink area.  (Jones Depo. at 155)

In November of 2002, Jones learned that Martinez planned to attend a conference in Phoenix hosted by Westec Interactive Security.  (Martinez Depo., Ex. 29)  Jones asked Martinez not to attend the conference.  (Id.)  Jones maintains that by accepting Westec's payment for his hotel, expenses, and meals, Martinez violated BBW's policy against accepting gifts in excess of fifty dollars.  (Jones Depo. 184-85)  Martinez states that he had permission from Pritchard to attend the conference.  (Martinez Depo. at 425)  Jones maintains that he did not.  (Id. at 193)

Jones states that in January of 2003, without authorization, Martinez directed one of his subordinates, Alves, to inform other members of BBW's Loss Prevention department that Limited Brands had decided to not centralize loss prevention.  (Jones Depo. at 195)  However, it had already been decided to implement the centralization plan beginning in February of 2003.  (Id. at 196)  Jones states that Martinez's unauthorized announcement caused associate relations problems.  (Id. at 195-96)  Martinez explains that he told Alves to tell the field personnel that they could not tell them anything about centralization, they should not worry about it, and instead they needed to focus on their responsibilities.  (Martinez  Depo. at 457)

Jones states that he counseled Martinez about his failure to build a relationship with him, take on a leadership role, and be a team member in the new organization.  (Jones

Depo. at 246-47)

Jones states that his concerns about Martinez caused him to question whether he could take on a larger role once the centralization was complete.  (Id. at 240)  Jones discussed his concerns with others at Limited Brands who were working on the centralization.  (Id.)  The group formed the opinion that Martinez was not right for the job because he would not embrace change, did not play a leadership role, and did not want to build relationships.  (Id. at 241-42)  Jones decided that because of the issues with Martinez in the past, and because Martinez was not going to be a director in the new organization, his employment should be terminated.  (Id. at 242)  Jones discussed the decision with Ken Stevens, who replaced Pritchard as CEO of BBW, Steve Lundeen, BBW's Vice President of Human Resources, and Doug Williams, Deputy General Counsel for Limited Brands.  (Id. at 242)  They supported the decision.  (Id. at 243)

Jones and Lundeen informed Martinez of his termination on January 20, 2003.  (Id. 141-44, 234-246, 276)  Defendants maintain that Martinez was not replaced (Id. at 255-56), and Martinez acknowledges that his former position of Director of Loss Prevention at BBW no longer exists.  (Martinez Depo. at 437)  Jones terminated three other Directors of Loss Prevention between July 2002 and February 2003.  (Jones Depo. at 262-68)  These Directors were all Caucasian.  (Doc. 28, Ex. 1)

Martinez believes that Jones targeted him for termination by sending him a number of emails.  (Id. at 438-39)  Also, Martinez had heard that Jones said he was going to "get" him regardless if it created a lawsuit.  (Id. at 377)

When Jones and Lundeen met with Martinez to inform him of his termination, they offered Martinez a severance package.  (Martinez Depo. at 430-31)  However, before

6

Martinez accepted the severance package, Limited Brands learned that Martinez entered into a two million dollar contract with Westec without authorization. (Jones Depo. at 224-28; Schlesinger Depo. at 130-31) Jones was shown a contract which was signed by Martinez right before he left. (Jones Depo. at 239) A meeting was held to discuss Martinez's involvement in the matter, but Martinez refused to divulge any information. (Williams Depo. at 135-38) Therefore, Limited Brands revoked the offer of a severance package while it conducted an investigation. (Martinez Depo. Ex. 31) In the meantime, Martinez accepted a position with another employer. (Willams Depo. at 138) Jones states that it was not his decision to withhold the severance package. (Jones Depo. at 251)

In his Complaint, Martinez alleges that Limited Brands, BBW, and Jones discriminated against him based on race, color, and national origin in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Doc. 3) Martinez's claims are based on the failure to promote him to Vice President of Loss Prevention, his termination, and the revocation of the severance package. (Id.)

## II.  ARGUMENTS OF THE PARTIES

While Defendants Limited Brands and BBW and Defendant Jones have filed separate motions for summary judgment, their arguments are substantially the same. The main distinction is that Defendant Jones argues that he is not an "employer" as defined by Title VII, and therefore he is not subject to liability under the statute. Defendants collectively argue that Martinez cannot prove a *prima facie* case of discrimination under either section 1981 or Title VII. Specifically, Defendants argue that Martinez cannot show that he was qualified for the promotion, that he was similarly situated to Jones, or that he was replaced after his termination.

7

Defendants argue that even if Martinez is able to establish a *prima facie* case, he is unable to show that Defendants' legitimate and non-discriminatory reasons for terminating Martinez are pretextual.  Defendants state that Martinez was not selected for promotion because he was not qualified and Jones was more qualified.  Defendants state further that Jones terminated Martinez for his unsatisfactory performance.  Defendants argue that Martinez cannot show that these reasons have no basis in fact and did not actually motivate the decisions to promote Jones over Martinez or to terminate Martinez's employment.

Finally, Defendants argue that an employer's revocation of a voluntary offer to pay severance does not constitute an adverse employment action for purposes of a discrimination claim.  Moreover, Defendant Jones argues that he had no involvement in the decision to revoke the severance package.

Plaintiff responds that he met the objective qualifications for the Vice President of Loss Prevention based on his experience and skills.  Plaintiff states that he was similarly situated to Jones because they were both qualified for the position.  Plaintiff also argues that there is statistical evidence to support his *prima facie* case.  Specifically, Martinez states that at most there was only one other Hispanic at the director level or above at Limited Brands.  Martinez states that Defendants' proffered reasons for not promoting him are pretextual because his 2001 performance review indicates that he had established good relationships with other functional areas.  Moreover, Martinez states that Limited failed to follow its policy of promoting from within and offered Jones the position before completing the interviews of Martinez.

Martinez argues that the reorganization and the elimination of his position would

8

only be relevant to back pay, and has no bearing on discrimination.  Moreover, Martinez states that his termination could not have been due to reorganization because three other Caucasian directors of loss prevention were retained and given other positions within Limited Brands, but he was not given the opportunity to transfer.  Martinez also argues that the reasons articulated by Defendant are pretextual as evidenced by the fact that he was never reprimanded or suspended for his performance, and there is no written record of any performance problems.  Martinez argues that the proffered reasons have no basis in fact and the decision to terminate him was not reasonable.  In addition, Martinez states that Defendants' evidence regarding his work performance are contradicted by testimony from people who worked with him.

Finally, as evidence that the revocation of the severance package was discriminatory, Martinez states that two Caucasian directors of loss prevention who were also terminated received severance packages.  Martinez argues that Defendants' claim that he was not authorized to sign contracts is pretextual because Pritchard had authorized him to sign contracts with Westec, and the contract was not a new agreement, but was for equipment which had already been installed.

In his Motion to Strike, Martinez seeks to have the Affidavit of Ken Montera struck because it does not meet the requirements of Federal Rule Civil Procedure 56(e). Martinez argues that Montera's affidavit is not based on personal knowledge, but is instead based on hearsay evidence and opinion testimony.  Defendants respond that personal knowledge is not limited to activities in which the declarant has personally participated, and courts have routinely admitted affidavit evidence of complaints received about a plaintiff's poor work performance.

III.    **ANALYSIS**

A.    <u>Motion to Strike</u>.

Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Affidavits that do not satisfy the requirements of Rule 56(e) are subject to motions to strike. *See Reddy v. Good Samaritan Hosp. & Health Center*, 137 F.Supp.2d 948, 954 (S.D.Ohio 2000).

Hearsay statements are those offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Court finds that the statements in Montera's affidavit are not being offered for the truth of the matter asserted, but are being offered to show the basis of Montera's opinion of Martinez's job performance. *Accord Brown v. ASD Computing Center*, 519 F.Supp. 1096, 1101 (S.D. Ohio 1981) (letter not viewed as hearsay because it is not considered as establishing that tasks were valuable, or that the plaintiff would be fired for non-performance of these items, but is rather considered as evidence that the plaintiff was advised of her supervisor's opinion, and given a warning concerning job performance and possible termination).

Moreover, the Court finds that Montera's affidavit is of limited use in reaching its decision on the Motions for Summary Judgment. The information contained in the affidavit can be found elsewhere in the record, and Montera's opinion regarding Martinez's job performance is echoed by others. Therefore, Plaintiff's Motion to Strike the Affidavit of Ken Montera is DENIED. Because the Court finds that Defendants have failed to show good cause as required by S.D. Ohio Civ. R. 7.2 (a)(3), Defendants' Motion for Leave to file a

10

Sur-reply is DENIED.

      B.     Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Moreover, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact.  *Karnes v. Runyon*, 912 F.Supp.280, 283 (S.D.Ohio 1995); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies.  *Karnes*, 912 F.Supp. at 283.

      C.     Claims against Limited Brands and BBW.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2-(a)(1).

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir.1997).

Martinez has not argued that there is direct evidence of discrimination.

Where no direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802.

To establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory

12

reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with public and private actors. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Sixth Circuit has held that claims based on section 1981 are governed by the same burden-shifting standards as claims brought under Title VII. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) Therefore, a failure to make a *prima facie* case under Title VII precludes a finding under § 1981. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000).

### 1. Failure to promote.

Defendants Limited Brands and BBW argue that Martinez cannot establish a *prima facie* case based on Limited Brand's failure to promote him to the position of Vice President of Loss Prevention because he cannot show that he was qualified for the position. Plaintiff points to his long career in loss prevention, his experience as a Director

13

of Loss Prevention for BBW, and his performance record, which included a low shrink rate.[1]

Assuming this evidence shows that Martinez was qualified for the position, Defendants have articulated a legitimate nondiscriminatory reason for selecting Jones for the position. Specifically, Jones was selected because he was more qualified for the position than Martinez. Defendants state that Limited Brands was looking for a leader and a team player who could take on the task of centralizing the loss prevention program.

Since Defendants have articulated a nondiscriminatory reason for its actions, Martinez must prove by a preponderance of the evidence that this reason is mere pretext for discrimination. Martinez has attempted to show pretext by attacking the credibility of the opinions and testimony Defendants have presented to support their reason for not selecting Martinez. Martinez also presents the affidavits of managers with whom he worked to contradict this testimony.

The use of subjective criteria is permissible in the selection of employees in management positions. *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1399 (6th Cir.

---

[1]Plaintiff has also argued that there is statistical evidence to support his *prima facie* case. In his deposition, Martinez testified that at most there was only one other Hispanic at the director level or above at Limited Brands. The Sixth Circuit has explained that for statistics to be valid in a discrimination case, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir.1987). However, statistical evidence supporting an inference of discrimination to establish a *prima facie* case need not be of the same probative value necessary to support a jury verdict on the ultimate question of discrimination. *Id.* at 943. Therefore, even flawed statistical evidence can be sufficient circumstantial evidence to make out a *prima facie* case. *See Schuch v. Savair, Inc.*, No. 03-1834, 2004 WL 2649713, at *23 (6th Cir. Nov.19, 2004) (unpublished). Nevertheless, the Court finds that Martinez's statement regarding the number of Hispanics at the director level or above is not persuasive statistical evidence. At a minimum, Martinez should have provided the Court with the total number of directors to allow the Court to calculate the percentage of Hispanics at that level. Therefore, the Court relies upon other evidence provided by Martinez to establish a *prima facie* case.

1990).  As this Court has recognized, "decisions about hiring and promotion in supervisory and managerial jobs cannot realistically be made using objective standards alone." *Police Officers for Equal Rights v. City of Columbus*, 644 F.Supp. 393, 436 (S.D. Ohio 1985), *citing*, *Rogers v. International Paper Co.*, 510 F.2d 1340 (8th Cir. 1975).  An employer has "discretion to choose among candidates with different but equally desirable qualifications." *Canham v. Oberlin College*, 666 F.2d 1057, 1061 (6th Cir. 1981), *cert. denied*, 456 U.S. 977 (1982).  However, "[t]he ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action."  *Farber*, 917 F.2d at 1399, *quoting*, *Grano v. Department of Development of the City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983).

The Court finds that Defendants did not use subjective criteria to disguise discriminatory action.  The only evidence of discriminatory animus in the record is a comment made by one of the interviewers regarding whether Martinez was from "near the border" of Mexico.  Even if this comment was to be interpreted as insinuating that Martinez had just come across the border, an isolated statement cannot support a finding of discrimination.  *Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) ("Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.").  Therefore, the Court concludes that Martinez has not carried his burden of showing that Defendants' stated reason for not selecting him for the promotion - that Jones was more qualified - is not pretext for discrimination.  *See Gee v. Liebert Corp.*, 2003 WL 343251 (6th Cir. Feb. 12, 2003) ("While . . . [plaintiff] has at least raised a genuine issue regarding his qualifications, there is still a substantial gap between

proving that he was among a number of qualified candidates for the job and proving that the reason he did not get the job was race discrimination.").

Moreover, the Court finds that the structure of the selection process supports Defendants' legitimate nondiscriminatory reason for its decision not to promote Martinez. An executive search firm and a loss prevention expert identified candidates for the position. Interviews were then conducted by more than one business leader from within Limited Brands.

Martinez makes two final arguments which the Court finds unpersuasive. First, Martinez points to a Limited Brands policy which states: "We try to promote from within as often as possible." Because this policy is not stated in terms of an absolute requirement, the Court does not find that Defendants' failure to promote Martinez from within the organization shows that the decision to hire Jones from outside the organization was discriminatory. Second, Martinez states that Jones was hired before Martinez was given a second or third interview. The Court finds that there is nothing about the decision to not grant Martinez additional interviews or the timing of the hiring of Jones which would show that failure to promote Martinez was discriminatory. Therefore, Defendants Limited Brands and BBW are entitled to summary judgment on Plaintiff's Title VII and section 1981 claims based on the failure to promote him to the position of Vice President of Loss Prevention.

2. Termination.

Defendants Limited Brands and BBW argue that Martinez cannot establish a *prima facie* case based on his termination because he cannot show that he was replaced after his termination or that there were similarly situated employees who were treated better than him. Martinez responds that he was replaced by Bob Pennucci, who is Caucasian

16

and three Caucasian directors of loss prevention were retained and given other positions within Limited Brands.  Martinez states that these three directors or loss prevention were similarly situated because they performed essentially the same job as his, but were working for different brands within Limited Brands.

The Court will assume that this is sufficient evidence to establish a *prima facie* case based on Martinez's termination.  Therefore, Defendants must articulate some legitimate nondiscriminatory reason for terminating Martinez.

Defendants state that Martinez was terminated for unsatisfactory performance, including not fostering good relationships with Store Operations, lacking the confidence of the business leaders, undermining the move towards centralization, not attending or participating in meetings with Jones, not visiting stores, not managing subordinates, ignoring Jones' directive that he not attend the Westec conference in Phoenix, disclosing confidential information, violating company policy regarding accepting gifts, and displaying a lack of leadership.

Martinez argues that the reasons proffered by Defendants are pretextual because they are not true.  Martinez argues that the affidavit by Ken Montera upon which Defendants rely constitutes inadmissible hearsay and Jones testimony cannot be relied upon because he is an interested party.  Moreover, Martinez points to the absence of any written documentation of his poor performance and alleges that all the documents written by Pritchard indicate that his performance was exemplary.  Martinez relies upon his 2000 and 2001 performance reviews, which were conducted by Pritchard and are void of any of the performance problems cited by Defendants.  (Martinez Aff. Ex. A)  Martinez also cites to testimony attesting that BBW had one of the lowest shrink rates of all the Brands;

documents showing that his shrink rate was reduced by fifty percent in 2002-2003; and an award he won in 2001 for the "Ounce of Prevention" program he developed to reduce shrink. (Schlesinger Depo. at 104-105; Martinez Aff. Exs. G, H) Martinez also relies on an email from Jones describing the Ounce of Prevention program as "Great work!!!" (Martinez Aff., Ex. P)

Martinez states that Pritchard told him that Project New View was to be his main priority. (Martinez Depo. at 317-18) Martinez states that Pritchard was his main supervisor, and he only had a "dotted line" responsibility to Jones. (Id. at 391) Therefore, Martinez argues that he was obligated to work on Project New View instead of attending meetings called by Jones or spending time traveling to stores.

Martinez presents the affidavit of Perry Doran, who was Director of Loss Prevention for the Limited when Martinez was employed. (Doc. 39, Perry Doran Aff. ¶ 1) Doran states that there would have been no reason for Martinez to make contributions during the meetings scheduled with Jones because the meetings were to tell the Loss Prevention Directors "how things were going to be." (Id. ¶ 5)

Finally, Martinez states that while he was attending the Westec conference in Phoenix, he also conducted company business. Martinez states that he met with the regional director for loss prevention for BBW and visited high shrink stores while in the Phoenix area. (Doc. 39, Smith Aff. ¶ 3; Martinez Aff. Ex. L)

An employer's business judgment is not an absolute defense to discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). However, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the

18

employment action was its actual motivation." *Id.*  Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-808 (6th Cir. 1998), *quoting*, *Burdine*, 450 U.S. at 256.

Martinez has not shown that Defendants failed to make a reasonably informed and considered decision before deciding to terminate him.  While Martinez cites several examples of praise he received from Pritchard and some successes he had while working for BBW, Jones made it clear to him that the expectations of him had changed.  For whatever reason, Martinez chose to not follow Jones' direction.  It is undisputed that Martinez missed meetings called by Jones, did not participate in the meetings he attended, did not make store visits to Jones' satisfaction, and attended the Westec conference in direct contravention of Jones' wishes.  The Court finds that based on the information before Defendants, it was not unreasonable to decide to terminate Martinez.  Martinez appeared uninterested in working with Jones and cooperating with him on the centralization of loss prevention.  Moreover, there is no evidence in the record that Defendants failed to make a reasonably informed and considered decision.  Jones considered his past experience with Martinez and consulted others before making the decision to terminate.  Therefore, Defendants Limited Brands and BBW are entitled to summary judgment on Plaintiff's Title VII and section 1981 claims based on the decision to terminate his employment.

3.    Revocation of severance package.

Defendants argue that the revocation of a voluntary offer to pay severance is not an adverse employment action.  However, some courts have held differently in the context of a retaliation claim.    *Paquin v. Fed. Nat'l Mortgage Assoc.*, 119 F.3d 23, 32 (D.C.Cir. 1997) (holding that employer's"withdrawal of its severance package offer, even assuming [employer] had no obligation to provide it, was adverse action."); *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir.1996) (concluding that a former employee established an adverse action under ADEA's anti-retaliation provision when she had to "go through several hoops in order to obtain her severance benefits"); *Bernstein v. The St. Paul Cos.*, 134 F.Supp. 730, 733 (D. Md. 2001) (finding that a reasonably minded jury could conclude employer retaliated against plaintiff by withdrawing severance package).  While Martinez has not brought a retaliation claim, the Court will assume that the revocation of the severance package was an adverse employment action.

Defendants argue that Martinez cannot show that similarly situated persons outside the protected class received severance packages despite engaging in similar misconduct. However, Martinez points out that two white directors of loss prevention were terminated around the same time as him and received severance packages.  (Jones Depo. 257) Martinez states that Jones terminated these directors for performance problems, yet they received severance packages.  (Id. at 256, 261, 262)

The Court finds that Martinez has established a *prima facie* case of discrimination based on the revocation of the severance package.  As a legitimate, non-discriminatory reason for the revocation, Defendants state that the severance package was withdrawn pending an investigation of the two million dollar Westec contract.

20

Martinez states that this reason is pretextual because Pritchard had authorized him to sign contracts with Westec.  (Doc. 39, Harkonen Aff. ¶ 2)  Martinez also states that the Westec contracts in question had already been approved, but because of an issue with refinancing, the contracts had to be renegotiated.  (Doc. 39, Linton Aff. ¶ 3)  While these arguments may question whether Martinez had authorization to sign the contract, Martinez does not dispute that Defendants were conducting an investigation of the matter, and that the investigation was not complete before Martinez accepted employment elsewhere.  As such, Martinez has failed to show Defendants' reason had no basis in fact, did not actually motivate the revocation of the severance, or was insufficient to motivate the revocation. Without a showing of pretext by one of those means, Defendants Limited Brands and BBW are entitled to summary judgment on Plaintiff's Title VII and section 1981 claims based on the revocation of the offer of a severance package.

      D.     <u>Claims against Paul Jones</u>.

          1.     <u>Title VII</u>.

The Sixth Circuit has held that individual employees cannot be held liable under Title VII.  *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997) (holding "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." ).  Therefore, Defendant Paul Jones is entitled to summary judgment on Plaintiff's Title VII claim against him.

          2.     <u>Section 1981</u>.

              a.     *Failure to promote*.

Defendant Jones argues, and Martinez does not dispute, that Jones cannot be held liable for the failure to promote Martinez to the position of Vice President of Loss

Prevention because he did not make the decision to not promote Martinez, but was instead a candidate for the position.  Therefore, Defendant Jones is entitled to summary judgment on Plaintiff's section 1981 claim based on the failure to promote him to the position of Vice President of Loss Prevention.

> b.    *Termination*.

Martinez believes that Jones targeted him for termination by sending him a number of emails.  Martinez had also heard that Jones said he was going to "get" him.

"A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).  Unsupported speculation cannot form the basis for demonstrating pretext.  *See Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).  As stated above, Martinez has not shown that the stated reasons for his termination were false, and Martinez's unsupported belief that Jones was "targeting" him or out to "get" him cannot establish pretext.  Moreover, there is evidence in the record that Jones terminated three Caucasian Directors of Loss Prevention between July 2002 and February 2003.   Therefore, Defendant Jones is entitled to summary judgment on Plaintiff's section 1981 claim based on the decision to terminate him.

> c.    *Revocation of severance package*.

Jones has testified that it was not his decision to revoke the severance package.  Martinez has not presented any evidence to the contrary.  Therefore Defendant Jones is entitled to summary judgment on Plaintiff's section 1981 claim based on the revocation of his severance package.

In summary, Defendants Limited Brands, BBW, and Jones are entitled to summary

judgment on all claims brought by Martinez. Accordingly, it is ordered that Defendants Limited Brands, Inc., and Bath & Body Works, Inc.'s Motion for Summary Judgment (Doc. 28) and Defendant Paul Jones' Motion for Summary Judgment (Doc. 29) are hereby **GRANTED**. It is further ordered that:

1.    Plaintiff's Motion to Strike the Affidavit of Ken Montera (Doc. 40) is **DENIED**;

2.    Defendants' Motion for Leave to file a Sur-reply (Doc. 49) is **DENIED**; and

3.    This matter shall be dismissed and stricken from the docket of this Court.

**IT IS SO ORDERED.**

     /s/ Michael H. Watson
Michael H. Watson, Judge
United States District Court